UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN F. FELLOWS,

    Plaintiff,

v.                                              Case No. 1:14-cv-506
                                                Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff was born on November 1, 1969 (AR 227).[1] He completed the 10th grade and had previous employment as an assembler, car mechanic, laborer, car wash manager and roofer (AR 234). Plaintiff identified his disabling conditions as: broken neck and left ankle; bulging discs; learning problems; depression; anxiety; foot problems; and sleeping problems (AR 233). This is not plaintiff's first attempt to obtain disability benefits. The administrative law judge (ALJ) summarized plaintiff's previous application for benefits as follows:

        On August 24, 2005, the claimant protectively filed applications for Title II and Title XVI. His claims were denied at the initial level. The claimant filed a request for hearing with an Administrative Law Judge. The claimant and a vocational expert were present during the hearing that was held and on August 28, 2008. An attorney represented the claimant. Based on the evidence of record, on

_____
[1] Citations to the administrative record will be referenced as (AR "page #").

>   September 26, 2008, the Administrative Law Judge concluded the claimant was not disabled (Ex B1A).
>
>   The claimant did not agree with the decision and filed an appeal. On April 23, 2010, the Appeals Council denied the claimant's request for review. The claimant did not file an appeal. Therefore, the September 26, 2008 hearing decision was the final decision of the Commissioner of Social Security (Ex B4A).

(AR 19).

>   This appeal involves plaintiff's claims filed in 2010:
>
>   On August 13, 2010, the claimant filed a Title II application for a period of disability and disability insurance benefits. The claimant also filed a Title XVI application for supplemental security income on August 16, 2010. In both applications, the claimant alleged disability beginning September 23, 2008. These claims were denied initially on June 30, 2011. Thereafter, the claimant filed a written request for hearing on July 21, 2011 . . . The claimant appeared and testified at a hearing held on October 19, 2012, in Grand Rapids, Michigan.

(AR 19). Shortly before the hearing, plaintiff amended his alleged onset date to October 1, 2008 (AR 226).[2] The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 7, 2013 (AR 19-34). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

---

[2] The Court notes that a portion of the administrative record, AR 194-226, was omitted from defendant's original filing of the record (docket nos. 10 and 11), and appears as a supplement to the record (docket no. 18).

might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."

> Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 1, 2008, and that he met the insured status requirements of the Act through March 31, 2010 (AR 22). At the second

step, the ALJ found that plaintiff had the following severe impairments: "status post cervical spine fracture, and cervical fusion; status post left ankle fracture; status post arthroscopic surgery, adhesive capsulitis, mild degenerative changes of the acromioclavicular (AC) joint; status post compression fractures of lumbar spine; degenerative disc disease of lumbar spine; sp [sic] right calcaneal fracture (2010); chronic obstructive pulmonary disease (COPD); cannabis dependence; borderline intellectual functioning; and depression" (AR 22). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 25).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no climbing ladders, ropes, and scaffolds; less than frequent balancing, stooping, crouching, crawling, kneeling, overhead reaching with both upper extremities or use of bilateral foot controls; no tasks that require rotation of neck such that the chin is behind shoulder, (as might be used in backing up a motor vehicle); no work at unprotected heights or around dangerous moving machinery; avoid concentrated exposure to fumes, dusts, gases, fumes, odors, poor ventilation and extremes of cold or heat; can understand, remember and perform simple routine tasks and make simple decisions, with less than frequent changes in work place expectations or environment.

(AR 27). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 32).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the national economy (AR 33). Specifically, plaintiff could perform the following work in the region: machine tender (2,000 jobs); assembler (1,500 jobs); and inspector (1,000 jobs) (AR 33).[3] Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 1, 2008 (the alleged onset date)

---

[3] The ALJ's decision did not identify the region (AR 33). However, the vocational expert testified that the "[t]he region is the state of Michigan and there's approximately 4,200,000 jobs that exist in Michigan" (AR 72).

through January 7, 2013 (the date of the decision) (AR 33-34).

### III. ANALYSIS

Plaintiff raised two issues on appeal:

**A.   Did the ALJ fail to properly balance the factors and provide good reasons for discounting the treating source opinion, as required by 20 C.F.R. §§ 1527(c), 416.927(c)?**

Plaintiff contends that the ALJ improperly applied the treating physician rule to a medical source statement. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the

opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff's claim arises from a two page "Physical Capacities Assessment" dated September 11, 2012, and signed by David Wilkins, PA-C and Matthew Powell, D.O. (AR 696-97). The ALJ addressed this assessment as follows:

> On September 11, 2012, a Physical Capacities Assessment indicated that due to the claimant's degenerative disc disease of the lumbar spine, [sic] cervical pain from fractured neck with fusion he can frequently lift up to 10 pounds. He should not bend more than sometimes. The limitations thus far appear reasonable when considering the medical treatment has not resolved the claimant's pain. Further, in giving the claimant the benefit of doubt [sic], I do not accept the "sometimes" ability to lift up to 25 pounds. However, I also find there is no explanation for the extreme limitations of sitting, standing, inability to complete an eight-hour workday, and missing three or more days of work per month. There is no medical evidence to support this type of daily restriction since October 1, 2008. Although the evidence shows that the claimant had surgery and required subsequent downtime from that, he had medical improvement. In September 2011, he was ambulating without difficulty (Ex B35F/28). There are no complaints of inability to sit for any length of time. The January 2009 imaging of the knees showed mild degenerative findings and the July 2011 MRI of the knees was negative (Ex B11F, B16F, B15F, B24F, B35F). The claimant has not complained of interference from his medications. Although the claimant could not perform the type of work he performed in the past, there is nothing in the record to substantiate a claim that he cannot complete an eight-hour workday on a consistent basis while performing unskilled, sedentary work. Therefore, the assessment in Exhibit B36F is given parital [sic] weight.

(AR 30).

The ALJ's review of the assessment was deficient. The ALJ did not identify the

7

authors of the assessment (Dr. Powell and PA-C Wilkins), let alone classify it as from a treating physician or from a physicians assistant. Defendant points out that there is no evidence of any examination of plaintiff by Dr. Powell and no ongoing treatment relationship between plaintiff and the doctor. Defendant's Brief at p. ID# 889 (docket no. 889). In her brief, defendant's counsel attempts to rewrite the ALJ's decision on this point by stating that "[t]he opinion from Dr. Powell and PA-C Wilkins should be viewed as an opinion from a non-examining acceptable medical source (Dr. Powell) and a treating 'other source' (PA-C Wilkins)," and that "the ALJ was not constrained by the treating physician rule to provide 'good reasons' for rejecting the opinions of Dr. Powels [sic] and PA-C Wilkins." *Id.* at p. ID# 890.

In his reply brief, plaintiff contends that there was an agency relationship between Dr. Powell and PA-C Wilkins and that the opinion should be treated as that of a treating physician. Plaintiff's Reply Brief at pp. ID## 904-06 (docket no. 17). In support of this agency theory, plaintiff relies on the Ninth Circuit's position expressed in *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996), in which that court held that under the "interdisciplinary team" regulation (20 C.F.R. § 416.913 (a)(6)) an "other" medical source (in that case a nurse practitioner) "working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not." Plaintiff's Reply Brief at pp. ID## 905-06. Plaintiff's reliance on *Gomez* is misplaced. As the Ninth Circuit later noted in *Molina v. Astrue*, 674 F.3d 1104, 1111 at n. 3 (9th Cir. 2012), the regulation relied on by the court in *Gomez* "has since been repealed."

Nevertheless, the Court agrees with plaintiff's statement that "at the very least, the ALJ, not the Commissioner's attorney, should have provided a finding and explanation of whether the opinion was evaluated as a treating source opinion." Plaintiff's Reply Brief at p. ID# 906. The

Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Here, the ALJ did not provide an analysis of the September 11, 2012 assessment sufficient to allow this Court to trace the path of her reasoning. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should determine whether the September 11, 2102 assessment was the opinion of a treating physician or a physicians' assistant and re-evaluate it accordingly.

> **B.    The ALJ found that plaintiff has minimal limitations with social functioning. However these limitations were not reflected in the RFC. Does the RFC postulated by the ALJ fail to fully convey the most that plaintiff can do despite his limitations, as required by 20 C.F.R. §§ 404.1545, 416.945?**

Plaintiff contends that the ALJ erred because she found that plaintiff had mild limitations in social functioning, but that her RFC failed to account for these limitations. Plaintiff's contention is without merit. RFC is determined at step four of the sequential evaluation. *See Gentry v. Commissioner of Social Security*, 741 F.3d 708, 722 (6th Cir. 2014). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and

continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 530 (6th Cir. 1992). Here, the ALJ's RFC took into account plaintiff's nonexertional limitations by stating that plaintiff "can understand, remember and perform simple routine tasks and make simple decisions" and limiting him to "less than frequent changes in work place expectations or environment" (AR 27).

The finding referred to by plaintiff was made at step three of the sequential evaluation when the ALJ was required to determine whether plaintiff met the "paragraph B" requirements of listed impairments 12.02 and 12.09 (AR 25-26). This finding was not an RFC finding made at step four. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00.A. ("RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments. An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder").

As the court explained in *Pinkard v. Commissioner of Social Security Administration*, No. 1:13-cv-1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014):

> [T]he ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00. Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10. Accordingly, this claim of error should be denied.

### IV.  CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to determine whether the September 11, 2102 assessment was the opinion of a treating physician or a physicians' assistant and re-evaluate it accordingly.  A judgment consistent with this opinion will be issued forthwith.


Dated:  July 8, 2015                                    /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge